NOT DESIGNATED FOR PUBLICATION

No. 124,481

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

XIANGYUAN SUE ZHU,
*Appellant*,

v.

KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Opinion filed October 21, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Xiangyuan Sue Zhu*, appellant pro se.

*Brian M. Vazquez*, of Kansas Department of Health and Environment, for appellee.


Before GREEN, P.J., SCHROEDER and CLINE, JJ.


PER CURIAM: This matter involves five consolidated pro se appeals filed by Xiangyuan Sue Zhu contesting various decisions by the Kansas Department of Health and Environment (KDHE) in its administration of Kansas' Medicaid program and handling of her appeals. Zhu seeks relief under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., after the district court denied her petition to review KDHE's actions in consolidating her five appeals and denying her requests for application of various expenses to her Medicaid spenddown and her request to terminate that spenddown.

We find Zhu has failed to show the agency made any legal or factual errors; although we do find one discrete issue which the agency failed to decide which requires resolution. We thus reverse and remand with directions for the Kansas Office of Administrative Hearings (OAH) to address Zhu's request to apply certain medical expenses mentioned in her fifth appeal and supplemental agency briefing to her Medicaid spenddown under K.S.A. 75-37,121 and K.S.A. 77-501.

*Zhu's claims*

Before we begin, we note that Zhu filed hundreds of pages in the proceedings below, most of which were vitriolic and almost incomprehensible. We only address the filings which appear relevant to the issues on appeal. And since Zhu is pro se, we endeavor to liberally construe those filings. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498-500, 505 P.3d 775 (2022).

Zhu filed a total of five appeals with OAH in response to various letters she received from KDHE about her qualified Medicare beneficiary status and the application of certain expenses to her Medicaid spenddown. The first three appeals—filed, respectively, on May 7, 2018, May 21, 2018, and June 7, 2018—were consolidated and addressed at a July 12, 2018 hearing before an Administrative Law Judge (ALJ). While these appeals raised many issues, Zhu admitted at the hearing that all her issues had been resolved other than: (1) application of her advanced premium tax credit to her spenddown and (1) application of medical expenses she incurred in China to her spenddown (which she has not raised on appeal). Zhu received an advance premium tax credit of $1,118 which reduced the amount of her Blue Cross Blue Shield (BCBS) monthly health insurance premium to $37.54. Zhu challenged KDHE's application of only $37.54 per month towards her spenddown, claiming she had a right to credit the entire amount of the premium, before application of the advance premium tax credit, to her spenddown.

2

While the ALJ's decision on the three consolidated appeals was pending, Zhu filed two more appeals—one on September 5, 2018, and another on October 10, 2018. The fourth appeal (which she characterized as an "update" of her pending appeals) only addressed application of the tax credit and the Chinese medical expenses. The ALJ placed this appeal on hold pending determination of Zhu's first three appeals, since the outcome of those three appeals may determine the outcome of her fourth appeal.

On September 24, 2018, the ALJ submitted several written questions to the parties about Zhu's claims and KDHE's position on various items. He requested the parties answer these questions by October 13, 2018. KDHE provided its responses on October 2, 2018. On October 10, 2018, Zhu requested a 30-day extension. She was given a 60-day extension, making her responses due December 12, 2018.

On the same day Zhu requested this extension, she filed a fifth appeal. This appeal mentioned two letters KDHE sent to Zhu in September 2018. In this appeal, Zhu stated:

> "Pursuant to K.S.A. 77-702, and according the Medical-KEESM Section 7532.4 the Notice dated 09/10/2018, see the attached Notice; and according the Medical-KEESM Section 2671, etc. the Notice dated 09/13/2018, see the attached Notice, are not satisfactory in my circumstances."

In the September 10, 2018 letter, KDHE again stated it would only apply $37.54 of Zhu's health insurance premium towards her spenddown. It also stated her request for application of her Chinese medical expenses was still pending review. And it denied application of other medical bills and expenses to her spenddown as either not allowable or insufficiently documented.

In the September 13, 2018 letter, KDHE notified Zhu that her qualified Medicare beneficiary (QMB) "[c]overage begins 11/01/2018."

OAH issued an acknowledgment and order on October 11, 2018, for Zhu's fifth appeal, in which it ordered KDHE to complete its summary response under K.A.R. 30-7-75 to Zhu's fifth appeal by October 25, 2018. But on that same day, the ALJ issued an order consolidating and staying all five of Zhu's appeals pending Zhu's response to questions from the ALJ about her claims, which was now due December 12, 2018.

Zhu filed a document titled, "Appellant's Memorandum in Support of Her Response to Request for Additional Submissions," on December 12, 2018. In it, she addressed her claims in all five appeals. As for her complaints about KDHE's September 10, 2018 letter, Zhu objected to KDHE's position that (a) the receipts Zhu submitted for certain expenses (a $30 charge from the Cotton O'Neil Clinic on October 30, 2017, a November 2017 KU Hospital charge for $150 and a December 2017 KU Hospital charge for $50, and a $60 charge from Dr. Mark Underwood, D.D.S. on May 4, 2018) could not be used to reduce her spenddown; (b) it could not apply the premiums Zhu submitted from Renaissance Dental; and (c) its position that it could only apply $37.54 of her BCBS premiums per month to her spenddown. She also mentioned she had faxed $490 in old dental bills to KDHE on September 10, 2018, for application to her spenddown, which she claimed KDHE still had not applied. She attached an invoice from Michael E. Weber, D.D.S., dated August 29, 2018, which contained a "[b]alance forward" of $490.

On December 19, 2018, the ALJ suggested a recent policy change may impact Zhu's claim for her Chinese medical bills. He asked KDHE to reconsider this claim, based on the policy change, and provide its decision by January 3, 2019. KDHE responded by December 21, 2018, noting the policy change did not impact this issue or KDHE's decision.

On December 22, 2018, Zhu filed a motion for sanctions against KDHE, in part for its failure to file summary appeal statements under K.A.R. 30-7-75 to all her appeals.

4

The ALJ denied this motion on January 16, 2019. He pointed out that he had consolidated all five appeals after determining "all five arose out of the same nucleus of operative facts, to wit, [KDHE's] refusal to (1) reimburse for an alleged emergency surgery in China; (2) discount her spenddown in the amount of her 'Obamacare' advance premium tax [credit], and; (3) reimburse her for a handful of dated and allegedly poorly evidenced receipts." The ALJ found Zhu suffered no harm by KDHE "not filing an appeal summary against claims which are, most likely, fatally defective" and "[e]ven so, [KDHE] has filed more than enough in summaries and briefings as bar to address the appellant's nonfrivolous claims." But the record does not reveal any filing by KDHE which addressed the expenses Zhu newly mentioned in her fifth appeal or the $490 in old dental bills mentioned in her response to the ALJ questions about her claims.

On January 29, 2019, the ALJ issued a partial summary judgment order. He noted Zhu's first four appeals addressed two issues—the Advance Premium Tax Credit and the Chinese medical expenses. He found Zhu had no right to apply either of these amounts to her spenddown. As for Zhu's fifth appeal, the ALJ found it contained only a "vague statement that fully supports the conclusion that the appellant was filing appeals merely to ensure that all [KDHE] action was before this tribunal," contained "no appealable action by the [KDHE] and [was] thus nonjusticiable." The ALJ did not address Zhu's filing in response to his questions about her claims.

Given the confusing and voluminous way Zhu presented the issues in her five appeals, the ALJ was concerned he may not have analyzed all of Zhu's claims or arguments in his partial summary judgment order. He issued a briefing order on February 1, 2019, which provided Zhu a chance to brief "any previously-filed BUT unanswered claims supporting her desire for relief." The ALJ asked Zhu to "present any and all claims for relief, reimbursement or review that she believes to be unreviewed at this time" and to "present any and all arguments that she is owed relief, reimbursement or

review that she believes to be unanalyzed in the record made by this presiding officer's previous rulings in this matter."

On the filing deadline of April 19, 2019, Zhu filed a document labeled "Exhibit No. 1F Statement of the Basis of Ms. Zhu's Medical Expenses and Why KanCare's Decisions or Actions Were Incorrect." In this document, Zhu repeated the claim in her fifth appeal that she did not agree with KDHE's September 10, 2018 letter. She offered additional allegations not previously mentioned in her appeals disputing KDHE's statements in its September 10, 2018 letter about the $30 Cotton O'Neil Clinic charge, the $200 in KU Hospital charges, the $60 Dr. Mark Underwood, D.D.S. charge, and the Renaissance Insurance dental premiums. She also repeated her claims about the $490 in dental bills that she alleged KDHE had not applied to her spenddown.

On May 8, 2019, the new ALJ issued an initial order. She acknowledged Zhu's supplemental filings but found they were not responsive to the instructions in the briefing order because, rather than identifying unaddressed claims or arguments, Zhu presented arguments already ruled on. The ALJ noted the partial summary judgment order acknowledged that by Zhu's fourth appeal, she had narrowed the issues to application of the tax credit and the Chinese medical expenses, and that "[a]ny additional medical expenses identified by the appellant were considered and disposed of without further analysis" in that order. In the initial order, the ALJ affirmed the agency's denial of Zhu's request to apply the Chinese medical bills and advanced premium tax credit to her spenddown.

Zhu appealed the initial order to the State Appeals Committee, which affirmed the initial order in a final order issued on July 30, 2019. The final order did not mention the $30 Cotton O'Neil Clinic charge, the $60 Dr. Mark Underwood charge, the $490 in old dental bills, or the $59.82 in Renaissance Dental premiums.

Zhu petitioned for review of the ALJ's decisions to the district court. Besides identifying KDHE's decisions on the BCBS premium and Chinese medical expenses, she also mentioned its denial of her Renaissance Dental premium and "[d]ue and owing expenses" in the amount of $855.05 (charged the balance on a credit card) and BCBS health insurance deductibles totaling $500. She later described the due and owing expenses to include three CVS and Walmart charges, the Cotton O-Neil Clinic $30 charge, the Dr. Mark Underwood charge of $60, and the $490 in old dental bills. And she made generic claims that her due process rights were violated and that KDHE incorrectly required her to meet a spenddown after she qualified for the QMB Program.

In KDHE's response, it did not address these other expenses—it only addressed the BCBS premium, Chinese medical expenses, Zhu's request to end her spenddown, and her due process argument. Similarly, in the district court's order denying Zhu's petition for review, it also did not address these other expenses. But it found KDHE properly denied application of the advanced premium tax credit and Chinese medical expenses to her spenddown, and that Zhu was not exempt from the spenddown requirement once she became a QMB. It also found Zhu's due process rights were not violated since the ALJ consolidated all five appeals after determining they all "dealt with the same issues and underlying facts."

Zhu now appeals the district court's order.

*Applicable Law*

*Medicaid*

KDHE has been designated as the state agency responsible for supervising and administering Kansas' state plan for medical assistance under the federal Social Security Act, 42 U.S.C. § 1396 et seq. (i.e., Medicaid). K.S.A. 75-7409. Within KDHE, the

7

Division of Health Care Finance administers Kansas' Medicaid program, which is called KanCare. K.S.A. 65-1,254.

Medicaid is a joint federal-state program, where the state cooperates with the federal government in its program of assisting the states financially in providing medical assistance to eligible individuals. See 42 U.S.C. § 1396-1 (2018); K.S.A. 75-7409(a); *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 317, 291 P.3d 1056 (2013). The federal government appropriates sums to carry out the state Medicaid programs, but these sums are only available to states which have submitted a plan for medical assistance that the secretary has approved. See 42 U.S.C. § 1396-1. The federal requirements for a state plan are set forth in 42 U.S.C. § 1396a (Supp. 2022). One of the requirements for the state plans is to make medical assistance available for the purpose of "[M]edicare cost-sharing" for QMBs. See 42 U.S.C. § 1396a(a)(10)(E)(i); 42 U.S.C. § 1396d(p)(1), (p)(3) (2018) (defining "qualified [M]edicare beneficiary" and "[M]edicare cost-sharing"). A QMB has a right to receive Medicare part A but also has income and resources below a certain amount that makes them eligible to receive Medicaid-funded assistance to pay for their Medicare premiums, coinsurance, and deductibles (i.e., pay for their "[M]edicare cost-sharing"). See 42 U.S.C. § 1396a(a)(10)(E)(i); 42 U.S.C. § 1396d(p)(1), (p)(3).

Kansas has promulgated regulations for its administration of Medicaid, which have the force and effect of law. K.S.A. 77-425; *Village Villa*, 296 Kan. at 320; *Hutson v. Mosier*, 54 Kan. App. 2d 679, 686, 401 P.3d 673 (2017). One of these regulations requires KDHE staff to follow the interpretation provided by manuals, other policy materials, and official releases or communications from the secretary or the secretary's designee. K.A.R. 129-2-1 (2021 Supp.). The parties rely on one of these manuals for their arguments on appeal—the Medical Kansas Economic and Employment Support Manual (KEESM). This manual provides the policy for the state's medical assistance programs. The January 2018 version of this manual controls here.

This manual notes Kansas' Medicaid program is divided into two segments—the "categorically needy" and the "medically needy." KEESM 2611 (January 2018). Medicaid coverage for the categorically needy is mainly mandated by federal law. KEESM 2611(1). As a condition of receiving federal funds, certain groups—called "mandatory groups"—must be covered under the Medicaid plan. KEESM 2611(1)(a). Relevant here, one mandatory group is persons eligible for restricted coverage under the QMB program. KEESM 2611(1)(a)(vii).

The "medically needy" segment of the Medicaid program "is comprised of those persons, who while meeting the non-financial criteria of one of the categorically needy programs . . . do not qualify because of excess income or resources . . . Most persons in the medically needy group are obligated for a share of their medical costs through the 'spenddown' process." KEESM 2611(2). The spenddown process allows individuals to submit expenses they have incurred for certain medically necessary items or services to become financially eligible for the medically needy program. KEESM 7532 (January 2018). In other words, a spenddown is like an insurance deductible, representing the amount a person (here, Zhu) would have to pay before KanCare would help pay for medical services for the rest of that person's spenddown period. KEESM 7532 governs what expenses can be applied to an individual's spenddown.

*Kansas Judicial Review Act*

The KJRA, K.S.A. 77-601 et seq., defines the scope of judicial review of a state administrative agency action. *Hutson*, 54 Kan. App. 2d at 683. The KJRA only allows a court to grant judicial relief from an agency action for the reasons listed in K.S.A. 77-621(c). *Hanson v. Kansas Corporation Comm'n*, 313 Kan. 752, 761, 490 P.3d 1216 (2021); *Village Villa*, 296 Kan. at 321 ("K.S.A. 77-621 governs judicial review of agency actions.").

9

Zhu's filings below and on appeal are confusing and difficult to follow. But since she is proceeding pro se, we liberally construe her arguments to determine whether relief is warranted based on the facts she alleges. *Joritz*, 61 Kan. App. 2d at 498-500.

Zhu appears to seek relief under K.S.A. 77-621(c)(3) (authorizing relief if "the agency has not decided an issue requiring resolution"), K.S.A. 77-621(c)(4) (authorizing relief if "the agency has erroneously interpreted or applied the law"), and K.S.A. 77-621(c)(7) (authorizing relief if "the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole").

This court exercises unlimited review over claims under both K.S.A. 77-621(c)(3) and K.S.A. 77-621(c)(4), giving no deference to the agency's view of the law under subsection (c)(4). *Hanson*, 313 Kan. at 761; *In re Tax Appeal of River Rock Energy Co.*, 313 Kan. 936, 944, 492 P.3d 1157 (2021). And when reviewing an agency's action under subsection (c)(7), "'the appellate court is limited to ascertaining from the record *if substantial competent evidence supports the agency findings*.'" *Atkins v. Webcon*, 308 Kan. 92, 96, 419 P.3d 1 (2018). "'Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined.'" 308 Kan. at 96. Substantial competent evidence is also referenced as "'such evidence as a reasonable person might accept as being sufficient to support a conclusion.'" 308 Kan. at 96. We cannot reweigh such evidence or engage in de novo review. K.S.A. 77-621(d).

As the party challenging agency action under the KJRA, Zhu has the burden to prove KDHE (and OAH) erred. *Village Villa*, 296 Kan. at 321.

*Zhu's arguments on appeal*

Zhu alleges KDHE violated her due process rights by terminating her QMB status on September 13, 2018, "without affording her the opportunity for an evidentiary hearing." She also alleges KDHE erred by: (1) denying her request to terminate her Medicaid spenddown once she qualified for QMB status on September 1, 2018; (2) refusing to apply her Advance Premium Tax Credit for her BCBS insurance premium and other expenses towards her Medicaid spenddown; and (3) failing to resolve issues raised in her fifth appeal. After reviewing the record as a whole we find Zhu has not established she is entitled to relief under the KJRA on the first two issues. But we find the agency did not resolve the issue of the expenses raised in her fifth appeal and supplemental briefing, so we remand for determination of that issue only.

*KDHE did not terminate Zhu's QMB status.*

Zhu bases her claim that KDHE terminated her QMB status on the fact that she received a letter from KDHE dated August 9, 2018, which stated her QMB status would begin September 1, 2018, and then another letter on September 13, 2018 which stated her QMB "[c]overage begins 11/01/2018." While admittedly confusing, KDHE explains the September 13, 2018 letter was generated by its regular review process, which was triggered by Zhu's original application for Medicaid benefits in November 2017, making November Zhu's "review month for the annual renewal of her Kansas Medicaid eligibility." KDHE denies terminating Zhu's QMB status.

Zhu failed to preserve this issue for review. She did not mention it in her petition for review to the district court, nor does she support her allegation that KDHE terminated her QMB status. As KDHE notes, nowhere in the September 13, 2018 notice does it say that Zhu's QMB status is or was terminated.

11

By failing to challenge the ALJ's decision on this issue before the district court, Zhu has failed to preserve it for appellate review. *State v. Johnson*, 293 Kan. 959, 964, 270 P.3d 1135 (2012) (issues not raised before the district court may not be raised on appeal). Zhu has thus failed to establish she is entitled to relief under the KJRA on this issue.

*Zhu's QMB status does not exempt her from the Medicaid spenddown requirement.*

Zhu next argues that once she became a QMB on September 1, 2018, she was no longer required to meet a spenddown to become financially eligible for Medicaid benefits. She alleges KDHE acted "in contradiction to the Federal law []Sections 1902(n)(3)(B) and 1866(a)(1)(A) of the Act, as modified by Section 4714 of the Balanced Budget Act"—which, according to Zhu, "prohibits all Medicare providers from billing QMBs for all Medicare deductibles, coinsurance, or copayments." She cites no legal authority and offers no argument to support her claim.

KDHE counters that QMB status does not eliminate a state's Medicaid financial eligibility requirements. It correctly notes the federal prohibition on billing QMBs that Zhu references applies to Medicare providers—not a state Medicaid program (i.e., the medically needy program Zhu was enrolled in) or its requirement for financial eligibility (i.e., requiring a spenddown for eligibility in the program). This case does not involve a *Medicare provider* that is *billing* Zhu for Medicare deductibles, coinsurance, or copayments. Rather, it involves a *Medicaid program* setting a certain low-income threshold that she must meet (through reporting medically necessary expenses she has incurred) before the program will help her pay for her Medicare deductibles, coinsurance, or copayments.

The sections Zhu references from the Social Security Act—1902(n)(3)(B) and 1866(a)(1)(A)—are currently codified at 42 U.S.C. § 1396a(n)(3)(B) (Supp. 2021) and 42

12

U.S.C. § 1395cc(a)(1)(A) (Supp. 2021), respectively. These statutes must be placed in context for a full understanding. First, 42 U.S.C. § 1396a(n) provides:

"(n) Payment amounts

"(1) In the case of medical assistance furnished under this subchapter [(Medicaid)] for medicare cost-sharing respecting the furnishing of a service or item to a qualified medicare beneficiary, the State plan may provide payment in an amount with respect to the service or item that results in the sum of such payment amount and any amount of payment made under subchapter XVIII [(Medicare)] with respect to the service or item exceeding the amount that is otherwise payable under the State plan for the item or service for eligible individuals who are not qualified medicare beneficiaries.

"(2) In carrying out paragraph (1), a State is not required to provide any payment for any expenses incurred relating to payment for deductibles, coinsurance, or copayments for medicare cost-sharing to the extent that payment under subchapter XVIII [(Medicare)] for the service would exceed the payment amount that otherwise would be made under the State plan under this subchapter for such service if provided to an eligible recipient other than a medicare beneficiary.

"(3) In the case in which a State's payment for medicare cost-sharing for a qualified medicare beneficiary with respect to an item or service is reduced or eliminated through the application of paragraph (2)—

(A) for purposes of applying any limitation under subchapter XVIII [(Medicare)] on the amount that the beneficiary may be billed or charged for the service, the amount of payment made under subchapter XVIII [(Medicare)] plus the amount of payment (if any) under the State plan shall be considered to be payment in full for the service;

(B) the beneficiary shall not have any legal liability to make payment to a provider or to an organization described in section 1396b(m)(1)(A) of this title for the service; and

(C) any lawful sanction that may be imposed upon a provider or such an organization for excess charges under this subchapter or subchapter XVIII [(Medicare)] shall apply to the imposition of any charge imposed upon the individual in such case.

"This paragraph shall not be construed as preventing payment of any medicare cost-sharing by a medicare supplemental policy or an employer retiree health plan on behalf of an individual."

And 42 U.S.C. § 1395cc(a)(1)(A) provides:

"(a) Filing of agreements; eligibility for payment; charges with respect to items and services

"(1) Any provider of services . . . shall be qualified to participate under this subchapter [(Medicare)] and shall be eligible for payments under this subchapter if it files with the Secretary an agreement—

"(A)(i) not to charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter . . . and (ii) not to impose any charge that is prohibited under section 1396(n)(3) of this title."

These sections do not, by their plain language, support Zhu's argument that Federal law prohibits KDHE from imposing a spenddown on her once she qualified for the QMB program—the prohibition applies to *providers of services*—not state Medicaid programs. See also *Detroit Receiving Hosp. and Univ. Health Center v. Sebelius*, 575 F.3d 609, 612 (6th Cir. 2009) (discussing the provisions in 42 U.S.C. § 1396a[n]). The district court properly denied Zhu's petition for relief on this issue.

> *Zhu had no right to apply the advance premium tax credit for her Blue Cross Blue Shield insurance premium towards her Medicaid spenddown.*

Although Zhu's stated BCBS monthly health insurance premium was $1,155.54, she received an advance premium tax credit of $1,118 which reduced the amount of her premium to $37.54 per month. In all five of her appeals, Zhu challenged KDHE's application of only $37.54 per month towards her spenddown, claiming she had a right to credit the entire amount of the premium, before application of the advance premium tax credit, to her spenddown.

14

KDHE relied on KEESM 7532.1(1) to support its position that the amount of the advance premium tax credit could not be applied toward the spenddown. The relevant portion of KEESM 7532.1(1) provides:

> **"7532.1 Limitations on Allowable Medical Expenses—**
>
> . . . .
>
> "The amount of the expense allowable is determined according to the following:
>
> 1. The portion of the expense assumed by a third party, whether legally liable or not, negates the individual's responsibility to pay; therefore, such medical expenses cannot be considered against the spenddown. This includes the portion of any allowable medical expense paid by Medicare or other health insurance. The portion not covered by insurance (such as the copayment or deductible) or not assumed by another third party is allowable."

KDHE argues the advance premium tax credit is a subsidy through the federal marketplace, and because Zhu was not responsible for this amount, it could not be considered against the spenddown. KDHE notes that it did apply the portion of Zhu's BCBS premium that was not covered by the subsidy towards her spenddown.

On appeal, it appears that Zhu is arguing KDHE's position stemmed from its allegedly erroneous interpretation of a specific Internal Revenue Service (IRS) publication she references discussing the tax credit. She contends this IRS publication is controlling as to interpreting the advance premium tax credit. She then argues KDHE should have applied KEESM 7532.3 (2018) to allow the amount of the advance premium tax credit to be applied toward her spenddown.

In her brief, Zhu sets forth the IRS publication she relies on as follows:

> "Page 3, I.R.S. Publication 974 (2018) provides:
> "What Is the Premium Tax Credit (PTC)?

"The PTC is a tax credit for Ms. Zhu who enrolls in a qualified health plan offered through a Marketplace. The credit provides financial assistance to pay the premiums for the qualified health plan by reducing the amount of tax Ms. Zhu owes, giving her a refund, or increasing her refund amount. She must file Form 8962 to compute and take the PTC on her tax return.

"Advance payment of the premium tax credit (APTC). APTC is a payment made during the year to Ms. Zhu's insurance provider that pays for part or all of the premiums for a qualified health plan covering Ms. Zhu. If APTC was paid for Ms. Zhu, she must file Form 8962 to reconcile (compare) this APTC with her PTC. If the APTC is *more* than her PTC, she has excess APTC and she must re-pay the excess. If the APTC is *less* than the PTC, she can get a credit for the difference, which reduces her tax payment or increases her refund."

Considering the arguments she made below to fill in the details of her argument here, it appears Zhu is arguing that under this IRS publication, the premium tax credit is a refund paid to *her* and thus *she* paid for this portion of her health insurance premium to BCBS. Or put another way, it was her responsibility to pay the advance premium tax credit to BCBS—not a third party's—and thus KEESM 7532.1(1) would not apply. But 42 U.S.C. § 18084 (2018) clarifies that the advance premium tax credit should be treated as having been made to the qualified health plan—BCBS here—and not to Zhu:

"For purposes of determining the eligibility of any individual for benefits or assistance, or the amount or extent of benefits or assistance, under any Federal program or under any State or local program financed in whole or in part with Federal funds—

. . . .

(2) any . . . advance payment of the credit allowed under such section 36B that is made under section . . . 18082 of this title shall be treated as *made to the qualified health plan* in which an individual is enrolled and *not to that individual*." (Emphases added.) 42 U.S.C. § 18084.

And 42 U.S.C. § 18082 (2018) clarifies who makes the payment of the advance premium tax credit to the qualified health plan—the United States Secretary of the Treasury. See

16

42 U.S.C. § 18082 (c)(2)(A) ("The Secretary of the Treasury shall make the advance payment under this section of any premium tax credit allowed under section 36B of Title 26 to the issuer of a qualified health plan on a monthly basis."); see also 26 C.F.R. § 1.36B (2021) (section of Internal Revenue Code discussing premium tax credit). Thus, the advance premium tax credit cannot be treated as having been paid by Zhu. Rather, it was paid by a third party.

This conclusion that the tax credit was paid by a third party brings us to Zhu's second argument, that KEESM 7532.3 applies (not KEESM 7532.1[1]), and that KEESM 7532.3 allows this expense paid by a third party to be applied toward her spenddown. The relevant portion of this subsection provides:

> "**7532.3 Expenses Paid by a Third Party**—Medically necessary expenses paid for by a public program funded by the State (or political subdivision of the State, such as a county), other than Medicaid, can be applied to spenddown. Only the portion of the expenses funded by the public program is allowable unless the client will continue to be obligated for the remaining portion of the bill. Such an expense is allowable in the base period in which it was incurred." KEESM 7532.3.

Effectively, Zhu is arguing that KEESM 7532.3 applies and allowed the portion of health insurance premium paid using her advance premium tax credit to be applied to her spenddown, because it was a medically necessary expense (her health insurance premium) paid for by a public program other than Medicaid—that public program being the Affordable Care Act. But as KDHE correctly notes, Zhu misquoted this KEESM subsection in her brief by omitting the phrase "funded by the [s]tate." And KDHE points out the advance premium tax credit was paid for by a third-party *federal* agency—making this KEESM section inapplicable.

KDHE is correct. As discussed above, the advance premium tax credit is funded by the federal government, not by the State. See 42 U.S.C. § 18082(c)(2)(A) (suggesting

United States Secretary of the Treasury must make the advance premium tax credit payment to the issuer of the qualified health plan); see also 26 C.F.R. § 1.36B. Because the advance premium tax credit is not funded by the state, KEESM 7532.3 does not apply or allow the portion of Zhu's health insurance premium paid using the advance premium tax credit to be applied to Zhu's spenddown. The district court properly denied Zhu's petition for relief on this issue as well.

*Expenses Zhu claims KDHE should have applied to her spenddown*

In a cryptic and confusing statement at the end of her first issue on appeal, Zhu appears to claim she is entitled to the application of other expenses to her spenddown, which she merely lists as: "32.85+90.87+129+14.87." She does not explain what these numbers mean or offer any explanation or argument about why she believes she is entitled to application of these expenses. Based on Zhu's record citation, these appear to be prescription expenses and an expense related to a clinical visit on November 19, 2017.

KDHE notes on appeal that it understood these expenses were a moot issue, since in its position statement to the ALJ before the July 12, 2018 hearing, KDHE pointed out that it allowed these expenses to be applied to Zhu's spenddown. Indeed, the portion of the record Zhu cites in her appellate brief on the expenses is that very position statement.

While we must liberally construe any arguments she raises that are properly before us, we are not allowed to bolster any arguments that Zhu did not adequately brief. *Joritz*, 61 Kan. App. 2d at 498-99. Zhu's abbreviated listing of these ostensible expenses is insufficient to raise the issue of these expenses on appeal, particularly given KDHE's unopposed explanation. We find Zhu has failed to establish she is entitled to relief under the KJRA on this issue.

*Issues about Zhu's expenses which she claims KDHE has not decided and which require resolution*

Zhu also includes several items at the end of her brief in a list of what she claims are "[i]ssues requiring resolution [that] have not [been] decided by PO Brown and the district court." The first item—her request to end her spenddown—was addressed, as noted above. And as also noted above, she has failed to support the second item on her list—her allegation that KDHE allegedly terminated her QMB status on September 13, 2018. She also lists five expenses, some which were mentioned in KDHE's September 10, 2018 letter and some which were not raised in any of her appeals.

(1) *Zhu's "insurance co-payment/Medicare deductibles of in* [sic] *the amount of $627.93."*

KDHE claims on appeal that it understood this expense was no longer an issue of contention. The same KDHE position statement that addressed the prescription expenses and clinical visit mentioned above also explained why the BCBS claims history statement Zhu submitted in support of these expenses could not justify application of these claimed expenses to her spenddown and why this issue is moot since Zhu's spenddown was $0 on the dates of service in the statement:

"Ms. Zhu submitted documents that were not allowed as expenses for vari[ous] reasons (Exhibit K):

"Blue Cross Blue Shield Claim history. Claims paid by BCBS are not the responsibility of Ms. Zhu and cannot be allowed against a spenddown. Only the amount remaining after insurance payments can be applied to the spenddown. The providers must submit the claims through the Medicaid billing process to have them properly applied to the spenddown. As described in KEESM 7532.4(1), the eligib[le] worker would be responsible for applying health insurance premiums, expenses for non-participating members of the assistance plan, due/owing expenses, and allowable nursing facility/institutional expenses. No other medical expenses are to be entered in KEES for person[s] attempting to

19

meet a spenddown. Beneficiary billed claims would not apply as Ms. Zhu was open/active with coverage and the providers indicated on the document are Medicaid providers. The document provided also shows the BCBS claims process; however, it is not an invoice/bill from the providers showing that Medicaid has been billed and/or showing a remaining balance. Please note that the spenddown amount was $0.00 for the months of November 2017-April 2018."

Zhu also waived any issue regarding application of this expense to her spenddown during the July 12, 2018 agency hearing. This expense was part of her first appeal, filed on May 7, 2018. The parties discussed Zhu's apparent confusion about some of KDHE's actions at the hearing, at which point Zhu then admitted all claims in her first three appeals were resolved other than (1) application of her Advanced Premium Tax Credit to her spenddown and (2) application of medical expenses she incurred in China to her spenddown (which she has not raised on appeal). And she confirmed these were the only two issues pending in her consolidated appeals when she filed her fourth appeal on September 5, 2018 (which she characterized as "update" of her pending appeals).

Zhu has not responded to KDHE's argument that these expenses are a moot issue, nor does she cite any portion of the record to establish that she raised this issue before the district court. Instead, she simply lists the expenses with no explanation on why they should be applied to her spenddown. Her record citations are no help, since she merely cites three of the four-page BCBS claims history statement in support of her claim for this expense.

Given Zhu's waiver of this issue at the July 12, 2018 hearing below and her failure to properly brief it on appeal, we find she has waived any claim for relief under the KJRA about this expense.

(2) *$30 Cotton O'Neil Clinic charge, $60 Dr. Mark Underwood, D.D.S. charge, $490 in old dental bills, and $59.82 in Renaissance Dental Premiums*

Zhu includes KDHE's decision not to apply these expenses to her spenddown in her list of issues requiring resolution which the agency has not decided. K.S.A. 77-621(c)(3). When liberally construing her pleadings below (which we are required to do, since Zhu is pro se), we find this argument has merit. *Joritz*, 61 Kan. App. 2d at 498 (Under the pro se liberal construction rule, "'pro se pleadings are to be liberally construed so that relief may be granted if warranted by the facts alleged.'").

Zhu consistently contested KDHE's decision to deny application of these expenses to her Medicaid spenddown, both to the agency and district court, but never received a review of this decision. She raised all these expenses but the $490 in old dental bills in her fifth appeal, and she mentioned these expenses and the dental bills in her "Appellant's Memorandum in Support of Her Response to Request for Additional Submissions," filed on December 12, 2018, in response to the ALJ's questions asking her to clarify her claims for relief.

The ALJ disposed of Zhu's fifth appeal in a footnote in his partial summary judgment order, finding it only a "vague statement that fully supports the conclusion that the appellant was filing appeals merely to ensure that all Agency action was before this tribunal," contained "no appealable action by the Agency and [was] thus nonjusticiable." But then he allowed Zhu a chance to "present any and all arguments that she is owed relief, reimbursement or review that she believes to be unanalyzed in the record made by this presiding officer's previous rulings in this matter." Zhu took the ALJ up on his offer and explained why KDHE incorrectly denied application of these expenses, to which KDHE never responded. And then the initial and final orders incorrectly found she had only "represent[ed] arguments already ruled upon" or "restated the same arguments" when she had explained her dispute with KDHE's decision on these expenses in her

21

supplemental filing. While both the initial and final orders affirmed what they characterized as the "core issues" in the case (the advance premium tax credit and Chinese medical expenses), neither order addressed the application of these other expenses to her spenddown.

Zhu challenged KDHE's decision on these expenses in her petition for review to the district court, but, once again, KDHE did not respond to this issue and the district court failed to address it. While KDHE argues on appeal that Zhu failed to timely submit documentation to support these expenses as required by K.A.R. 129-6-54 (2021 Supp.), and that application of these expenses is moot because it would not overcome Zhu's large spenddown balance, these are new arguments on appeal. That is, we do not see that KDHE made these arguments in any filing either in the administrative or district court proceedings.

KDHE asks us to make findings of fact and freshly determine this issue on appeal, which we cannot do. Instead, when K.S.A. 77-621(c)(3) is implicated, this court typically remands the matter to the agency to consider the undecided issue. *Hanson*, 313 Kan. at 761. Since this issue is not purely legal, we cannot decide it de novo. See 313 Kan. at 761. We therefore remand to the district court with direction to remand this issue to the Office of Administrative Hearings for further proceedings.

(3) *Social Security income*

The last item on Zhu's list was "$280 of her social security income for each month beginning in Sept. 2018." We cannot discern what issue Zhu is claiming exists over her Social Security income, nor can we find any evidence in the record that Zhu raised this expense in any of her appeals. Zhu provides no record citation to support this item on her list. We are only required to liberally construe Zhu's pro se arguments which are properly before us. *Joritz*, 61 Kan. App. 2d at 498-500. We find this one is not.

22

Zhu also does not explain why we can consider the disposition of these expenses for the first time on appeal. Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36); *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). While there are exceptions to the general rule that issues cannot be raised for the first time on appeal, Supreme Court Rule 6.02(a)(5) requires Zhu to explain why the newly raised issue is properly before us. She did not. And even if we exercised our discretion to find that one of the recognized exceptions applied, Zhu did not adequately brief this issue. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). She did not provide an argument with supporting legal authority for this issue. As a result, we find Zhu has waived or abandoned appellate review. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017); *Joritz*, 61 Kan. App. 2d at 498-99.

Since Zhu did not properly raise this issue in any of her five appeals, the district court had no jurisdiction to review it and neither do we. See K.S.A. 77-617; *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 411-12, 204 P.3d 562 (2009) (district court may only review those issues litigated at the administrative level). We find Zhu has waived any claim for relief under the KJRA for this expense.

*KDHE did not wrongfully consolidate Zhu's five appeals*

Zhu next argues her due process rights were violated when KDHE consolidated all five of her appeals. We find this claim without merit as to the first four appeals and moot as to the fifth. She admitted the first four appeals addressed only two issues—both of which were determined after a hearing on these issues and after she was allowed to present extensive posthearing briefing. And while the ALJ incorrectly failed to determine the issue in her fifth appeal involving application of the other expenses to her spenddown, we are remanding the matter to the OAH to address Zhu's request to apply certain medical expenses mentioned in her fifth appeal and supplemental agency briefing to her Medicaid spenddown under K.S.A. 75-37,121 and K.S.A. 77-501, which should

23

determine this issue. Since we are granting Zhu relief under the KJRA to determine this issue from her fifth appeal, any claim that the fifth appeal was incorrectly consolidated with her initial four appeals is now moot.

Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.